UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
REYES FERNANDEZ, an individual, on
behalf of himself and all others similarly
situated,

                   Plaintiff,

    -against-

PRIMEFLIGHT AVIATION SERVICES,
INC.; and MIKE WEIN; jointly and
severally,

                 Defendants.
--------------------------------------------------x

**MEMORANDUM
AND   ORDER**

11 CV 4862 (CLP)

On October 3, 2011, plaintiff Reyes Fernandez ("plaintiff" or "Fernandez") commenced

this class action and collective action on behalf of himself and others similarly situated, against

defendants Primeflight Aviation Services, Inc. ("Primeflight") and Mike Wein ("Wein")

("defendants"), jointly and severally, alleging that defendants failed to pay their employees the

required minimum and overtime wages, in violation of the Fair Labor Standards Act, 29 U.S.C. §

201 et seq. ("FLSA"), and New York Labor Law Article 6 § 190 et seq. and Article 19 § 650 et

seq. ("NYLL").  (Compl.[1] ¶¶ 1-2).

    Presently before this Court is a joint motion requesting:  (1) an Order for preliminary

approval of the Joint Stipulation of Settlement and Release (the "Settlement Agreement"); (2)

conditional certification of the Settlement Class; (3) appointment of plaintiff's counsel, Brandon

---

[1] Citations to "Compl." refer to the First Amended Complaint and Jury Demand, filed
January 19, 2012.

Sherr and Justin Zeller of the Law Office of Justin A. Zeller as Class Counsel; (4) approval of the Proposed Notice of Settlement (the "Notice"); and (5) approval of the Class Action Settlement Procedure. (Pl.'s Mot.[2] at 1).

## BACKGROUND

Plaintiff brings this action on behalf of approximately 1,075 current and former tipped employees who worked for Primeflight at any time between October 3, 2005, and December 31, 2011 (the "Class" and the "Class Period"). (Settlement[3] ¶ A-16). Plaintiff states that Primeflight, which operated out of the various airports throughout New York during the Class Period, hired plaintiff and others to provide airline passengers assistance with their luggage, curb side assistance, and assistance with wheelchairs and other related passenger equipment. (Pl.'s Mem.[4] at 8). Plaintiff alleges that defendants failed to pay non-exempt employees overtime compensation for hours worked in excess of 40 hours per week, failed to pay employees the correct minimum wage rate, and failed to pay the required uniform maintenance allowance in

---

[2] Citations to "Pl.'s Mot." refer to Plaintiff's Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel As Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

[3] Citations to "Settlement" refer to the Settlement Agreement, filed June 20, 2013.

[4] Citations to "Pl.'s Mem." refer to Memorandum of Law In Support of Plaintiff's Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

violation of the FLSA and NYLL. (Compl. ¶ 1; Sherr Aff.[5] ¶¶ 8-9).

Since filing the Complaint and Amended Complaint, the parties have engaged in extensive discovery, including the exchange of hundreds of documents and computer spreadsheets. (Sherr Aff. ¶ 11). On November 22, 2011, the parties began discussing the action with an intention to settle, but by May 23, 2012 the parties were at an impasse. (Id. ¶¶ 10, 12). By June 27, 2012, however, the parties reached a settlement before the Court, and have since been negotiating the written agreement and the Notice to the Class. (Id. ¶ 14). Presently both parties have signed the Settlement Agreement. (Id. ¶ 15).

Accordingly, plaintiff requests that the Court[6] conditionally certify, under Rule 23 of the Federal Rules of Civil Procedure, all persons who were employed by defendant, in a tipped position, at any time between October 3, 2005, and December 31, 2011, in the State of New York, and who were required to wear defendant's uniform. (Settlement ¶ A-16).

As part of the Settlement Agreement, defendants have agreed to create a settlement fund of $605,503.79 (the "Settlement Fund") to resolve the claims of all qualified claimants. (Pl.'s Mem. at 11; Settlement ¶ A-11). Of the total Settlement Fund of $605,503.79, $484,403.03 has

---

[5] Citations to "Sherr Aff." refer to the Affirmation of Attorney Brandon D. Sherr in Support of Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

[6] On September 6, 2012, the parties executed a Consent to have the undersigned supervise the preliminary approval of the class action settlement, certify the Class for settlement purposes only, appoint Class Counsel, conduct the Fairness Hearing and hear objections to the settlement from Class members, determine any award of fees and costs and any award to the Class Representative, and enter judgment based upon the settlement. (Pl.'s Mem. Ex. 4). In the event the settlement is not approved or subsequently vacated or modified on appeal, the consent terminates. (Id.)

been designated as the "Aggregate Settlement Proceeds" which will be distributed to the Class on a pro rata basis, and which consists of three categories of compensatory or liquidated damages as follows:  1) $226,792.32 to settle claims related to tip credits; 2) $193,574.07 to settle claims for uniform maintenance; and 3) $44,036.64 to settle any remaining wage and hour claims asserted in the action.  The Class representative, Mr. Fernandez, will receive $20,000, and the remaining $121,100.76 will be awarded as attorneys' fees to Class Counsel, subject to approval by the Court.  (Settlement ¶ A-11; Pl.'s Mem. at 11).  The parties have agreed that any unclaimed funds will be distributed half to the American Red Cross and half to the Association Tepeyac de New York.  (Settlement ¶ G; Pl.'s Mem. at 11).  None of the funds will revert back to defendants. (Id.)

By settling the Rule 23 Class, the parties seek to resolve the FLSA Collective Action as well.  For any tipped employee to participate in the settlement, he or she must fully participate in both the Class Action and the Collective Action by timely executing and returning the Consent to Become Party Plaintiff Form ("Consent Form") attached to the Notice within 75 days after the Notice has been mailed to the Class.  (Settlement ¶ B-4; Pl.'s Mem. at 12).  A Class member who fails to opt in to the Collective Action and who does not affirmatively opt out of the Class Action is deemed to participate in the Class Action  and will receive 70% of his or her allotted share. (Settlement ¶ E; Pl.'s Mem. at 12).  If a Class member fails to opt out of the Rule 23 Class by the applicable deadline, but later opts in to the FLSA Collective Action Class by executing and returning the proper forms within a reasonable time period after the deadline has passed, he or she may claim the allotted proceeds upon consent of both Class Counsel and defense counsel. (Id.)  Class members who do not opt out will release all NYLL claims brought in this case or

4

based on the same facts and circumstances of this case.  (Settlement ¶ F).

The parties have agreed that defendants' counsel, King & Ballow, will act as the Claims Administrator, and any fees incurred by the Claims Administrator will be paid by defendants, and not deducted from the Settlement Fund.  (Settlement ¶ A-17; Pl.'s Mem. at 14).

The parties jointly move for an Order approving the proposed settlement embodied in the Settlement Agreement, the Consent Form, and the Notice to the Class members.  (Id. at 8).

## DISCUSSION

I.   Rule 23 Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, a plaintiff also must satisfy one of the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions and a class action is superior to other methods for bringing suit. Fed. R. Civ. P. 23(b).  See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).  It is a plaintiff's burden to establish compliance with the requirements of Rule 23,

5

but in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cnty. Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000). For purposes of settlement only, defendants do not oppose conditional certification. (See Pl.'s Mem. at 24 (citing 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"))).

### A. The Requirements of Rule 23(a)

#### 1. Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a) has been satisfied. As noted, there are allegedly 1,075 potential Rule 23 Class members (see Pl.'s Mem. at 8), and factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, weigh heavily in favor of a class action in this case. See Savino v. Computer Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998); see also Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (noting that such factors for determining the impracticality of joinder include the "judicial economy" that arises from avoiding multiple suits and the financial resources and ability of claimants to institute

6

individual suits). Moreover, the Second Circuit has noted that "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S. 2277 (1995). Accordingly, the Court finds that the requirement of numerosity has been satisfied.

> 2. Common Questions of Fact or Law

In determining whether the plaintiff can show that the claims of the potential Rule 23 Class members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)). As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality. In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010). In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Savino v. Computer Credit, Inc., 173 F.R.D. at 352.

Here, there are several common legal and factual issues in this case. More specifically, the Class' claims involve: 1) whether defendants failed to compensate their tipped employees the correct minimum wage in compliance with the NYLL; 2) whether defendants failed to pay overtime compensation for hours worked in excess of 40 hours per workweek in violation of the FLSA and NYLL; and 3) whether defendants failed to pay a uniform maintenance allowance to maintain and launder the required uniforms in violation of the NYLL. (Pl.'s Mem. at 25-26). As such, the Court finds that there are common issues sufficient to satisfy the requirements of Rule

23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that plaintiff's claims be typical of the claims of the Class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, plaintiff Fernandez's claims satisfy the requirements of the Rule in that he was a skycap and a tipped employee who worked for defendant Primeflight at LaGuardia Airport in New York. (Pl.'s Mem. at 26-27; Compl. ¶ 22). Like the other members of the proposed Class, Fernandez was subjected to the same policies and procedures governing Primeflight employees' responsibilities and he was paid in accordance with the same pay structure of the other proposed class members. (Pl.'s Mem. at 27). Irrespective of any differences in the amounts of overtime, wages or maintenance allowances owed, plaintiff's claims stem from defendants' alleged uniformly wrongful conduct, and are therefore sufficiently typical to warrant certification.

### 4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation." Halford v. Goodyear Tire

8

& Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d

Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the class members'

interests may not be "'antagonistic'" to one another.  County of Suffolk v. Long Island Lighting

Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

  Here, Class Counsel claim to have extensive experience in prosecuting wage and hour

class actions, and have been appointed and certified as counsel in several certified collective

actions.  (Sherr Decl. ¶¶ 3, 4).  Indeed, Class Counsel also claim that they have demonstrated

their ability to prosecute this case diligently and to represent the interests of the potential Rule 23

Class in that they have represented plaintiffs in approximately 145 similar civil actions over the

past three years.  (Id. ¶ 4; Pl.'s Mem. at 30-31).

  Class Counsel also represent that neither the plaintiff nor Class Counsel have any conflict

of interest with the members of the potential Rule 23 Class.  (Pl.'s Mem. at 27).  In order for a

potential or actual conflict to defeat certification, it "must be fundamental."  In re Flag Telecom

Holdings, Ltd. Secs. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations

omitted).  Based on the nature of the plaintiff's claims and on the representation that no conflict

of interest exists, the Court finds that plaintiff's claims are so interrelated with those of the other

potential Rule 23 Class members that he will be an adequate Class representative.

  B. The Requirements of Rule 23(b)(3)

    1. Common Questions Predominate Over Individual Issues

Plaintiff must also establish that the proposed Class meets the requirements of Fed. R.

Civ. P. 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and

common issues must predominate in order to warrant adjudication as a class. Amchem Prods,
Inc. v. Windsor, 521 U.S. at 623. Courts focus on whether there are common questions related to
liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003);
Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there
are defenses that affect class members differently, that alone "does not compel a finding that
individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust
Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208
F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24
(2d Cir. 2006).

In this case, plaintiff alleges that the proposed Rule 23 Class members were governed by
the same pay policies and procedures, and that these common issues predominate over those
affecting any one individual. (Pl.'s Mem. at 28-29). Thus, the Court finds that common
questions predominate in this case.

### 2. Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiff must demonstrate that "a class action
would achieve economies of time, effort, and expense, and promote uniformity of decision as to
persons similarly situated, without sacrificing procedural fairness or bringing about other
undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal
quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; [(3)] the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;

10

and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, plaintiff claims that since the parties have agreed to resolve the case, the question of manageability is of no consequence. (Pl.'s Mem. at 29 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. at 620)). Moreover, since the plaintiff and the Class members have limited financial resources, proceeding as a class action will achieve economies of scale for the Class members and preserve judicial resources by consolidating common issues of fact and law, with the result of preserving public confidence in the system by avoiding inconsistent adjudications. (Pl.'s Mem. at 29-30 (citing cases)). Furthermore, in this case, there is no indication that the potential Rule 23 Class members desire to control their own cases.

As a result, the Court accepts that a class action is the superior method of resolution in this case.

### 3.  Class Certification

The Court finds that plaintiff has satisfied the requirements of Rule 23(b)(3). Pursuant to that provision, the Court hereby provisionally certifies a Rule 23 Class for settlement purposes, consisting of all persons who were employed by defendants in a tipped position, in New York State at any time from October 3, 2005 to December 31, 2011, and required to wear defendants' uniform.

II.    Appointment of the Class Counsel

The Court appoints plaintiff's attorneys, Brandon Sherr and Justin Zeller, as Class

Counsel.  In evaluating the adequacy of class counsel, Rule 23(g) requires the Court to consider:

(1) the work done by counsel in investigating the potential claims in the case; (2) counsel's

experience in handling similar class actions and other complicated litigation; (3) counsel's

knowledge of the applicable law; and (4) the resources counsel will expend to represent the class.

Fed. R. Civ. P. 23(g).  In this case, both attorneys have extensive experience litigating and

settling wage and hour cases and other employment cases, and thus they are well-versed in the

applicable law.  (Pl.'s Mem. at 30-31).  Moreover, both attorneys already have expended

significant time pursuing discovery in this case in an effort to identify and properly prosecute the

claims on behalf of the affected individuals.  (Id.)

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule

23(g), and appoints them to represent the Rule 23 Class in this matter.


III.    Preliminary Approval of the Class Settlement

The parties seek preliminary approval of the proposed settlement, as memorialized in the

Settlement Agreement.  The settlement is intended to encompass the claims of both the Rule 23

Class members and the opt-in FLSA Class members.  (See Pl.'s Mem. at 16, 17; see also

Settlement at 1, 5-6).


A. Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must

12

determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116. Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012). In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing. Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

13

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Although the Court is not required to make a finding of fairness as to the underlying

14

settlement at this time, the Grinnell factors are instructive.  See Torres v. Gristede's Operating

Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1,

2010) (noting that "[p]reliminary approval of a settlement agreement requires only an initial

evaluation of the fairness of the proposed settlement on the basis of written submissions and an

informal presentation by the settling parties") (internal quotation marks and citations omitted).


B.      Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into after extensive arms-

length negotiations between counsel, following the preliminary exchange of discovery, including

the exchange of hundreds of pages of documents and "extensive computer spreadsheets." (Sherr

Aff. ¶ 11).  According to the parties, the settlement negotiations began in November 2011 and

concluded in June 2012. (Id. ¶¶ 10, 13).  The Court held two settlement conferences, one on

April 10, 2012, and one on June 27, 2012, at which time the parties reached a settlement. (Id. ¶¶

12, 13).  Additionally, since the settlement was agreed to in principle, the parties have engaged in

extensive negotiations on its terms. (Id. ¶ 14).  Given the presumption of fairness when a class

settlement has been reached after "arm's-length negotiations between experienced, capable

counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at

116, the Court finds that there was procedural fairness in reaching the proposed settlement.


C.      Analysis of Substantive Fairness

1.   Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, while the expense and likely duration of this litigation is

difficult to assess, the Court notes that defendants deny liability. (Defs.' Ans.[7] ¶¶ 1-52). Indeed, defendants not only deny that they failed to pay their employees proper wages, but defendants originally denied that the case was appropriate for class action certification in the first place. (Id. ¶ 67). This suggests that trial in this case would be contested and would potentially be long and complicated.

Moreover, class actions, especially in the context of FLSA claims, are inherently complex. See Tiro v. Public House Invs., Nos. 11 CV 7679, 11 CV 8249, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (detailing the complexity and expenses involved in fully litigating FLSA class claims, and noting that the complexity is a factor in favor of settlement); see also In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd, 236 F.3d 78 (2d Cir. 2001). In the absence of a settlement, this case would require a substantial expenditure of money and time by both parties in pursuing this litigation, including additional discovery that would be needed to establish liability and damages, including depositions of class members and defendants' managers. (Pl.'s Mem. at 18). In addition, because this settlement was achieved prior to dispositive motions, if the case were to proceed, there would be a need to expend funds on motion practice, and motions for certification and decertification, dispositive motions, and opposition papers to such motions. A trial in this matter would consume tremendous amounts of time and resources and, even assuming plaintiff were successful in establishing defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay and increase costs to all parties. (Id. at 18-19). Thus, this factor of

---

[7] Citations to "Defs.' Ans." refer to defendants' Answer to plaintiff's amended Complaint, filed with the Court on February 2, 2012.

potential protracted litigation favors settlement.

### 2. Reaction of Class to Settlement

The reaction of the class to the settlement is an issue that can be addressed only after notice of the proposed Settlement Agreement has been sent to the class and the time for objections has passed. Since notice of the Settlement Agreement has not yet been distributed to the Class members, the Court need not address this issue at this time. However, the named plaintiff has expressed his approval of the settlement by executing the Settlement Agreement. (Pl.'s Mem. at 19).

### 3. Stage of Proceedings and Amount of Discovery Completed

At this point, the parties have conducted adequate discovery over nearly two years to permit them to assess the fairness and reasonableness of the proposed settlement in light of the relevant provisions of the FLSA and NYLL. (Pl.'s Mem. at 19). Furthermore, the parties exchanged additional financial information and data to enable them to evaluate the strengths and weaknesses of the claims of the Class members and to fully evaluate potential damages. (Id. at 19-20). When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored. Tiro v. Public House Invs., 2013 WL 4830949, at *7; In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537. Given the extent of discovery conducted in this case, the Court finds that this factor favors approval of the proposed settlement.

### 4. Establishing Liability and Damages and Maintaining the Action Through Trial

The risk of establishing liability also favors settling this dispute. Defendants have presented several affirmative defenses through which they may avoid liability. (Defs.' Ans. ¶¶ 53-71). Defendants have argued that Class certification would be difficult to achieve and there

17

are numerous issues regarding the credibility of Class members in accurately reporting the tips that they received that may undermine plaintiff's case. (Pl.'s Mem. at 20-21). Plaintiff's likelihood of success should be evaluated in light of the plaintiff's theory of recovery, and the lack of precise records of tips may make it challenging to prove damages if the case were to go to trial. (Id.) See also Sampaio v. Boulder Rock Creek Developers, Inc., No. 07 CV 153, 2007 WL 5209390, at *1 (E.D.N.Y. Sept. 6, 2007) (approving FLSA settlement where there was "little to no documentation of the hours that plaintiff worked each week"); Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 119 (finding that plaintiffs would have faced "significant challenges in proving damages," a factor favoring settlement).

Finally, considering the risks of appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

### 5.   Ability of Defendants to Withstand Greater Judgment

According to plaintiff, "it is clear that Defendants operate in an environment in which there is competition." (Pl.'s Mem. at 22). Thus, even if defendants could withstand a greater judgment than the total amount for which the case is settling (see id.), plaintiff argues that pursuant to the settlement, defendants have committed to fund the settlement amount, eliminating the difficulties and risk of collection in the future. Thus, the Court finds this is not a significant factor in this case because the remainder of the Grinnell factors favor approval of the settlement.

### 6.   Range of Reasonableness of Settlement Fund

Moreover, there is no way to determine with certainty what amount of damages would be awarded in the event of a successful prosecution of the litigation. See In re Union Carbide Corp.

18

Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (quoting In re

"Agent Orange" Prod. Liab. Litig., 597 F.Supp. 740, 762 (E.D.N.Y. 1984) (noting that "[d]ollar

amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case"); Republic

Nat'l Life Ins. Co. v. Beasley, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citing Milstein v. Werner, 57

F.R.D. 515, 524 (S.D.N.Y. 1972)).

      Where the settlement provides "a meaningful benefit" to the class, settlements have been

found reasonable.  In re Metlife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y.

2010).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10

CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v.

Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  When the proposed settlement

provides a meaningful benefit to the Class when considered against the obstacles to proving

plaintiff's claims with respect to damages in particular, the agreement is reasonable.  See In re

Metlife Demutualization Litig., 689 F. Supp. 2d at 340.

      Even absent the risk of establishing liability, the value of the Settlement Fund justifies

settling this case.  Under the Settlement Agreement, qualified Class members will each receive

their proportionate share of what remains after deducting from the $605,503.79 total award an

award for attorneys' fees and costs, and an enhanced payment to the class representative.  (See

Settlement ¶ C-11; see also Pl.'s Mem. at 11-12).  As noted earlier, all expenses of administering

the Settlement Fund will be borne by defendants.  (Pl.'s Mem. at 11-12, 14).  Given the number

of Class members who may choose to accept, the settlement amount, and plaintiff's projection

that each Class member will recover approximately 70% or more of the Class member's potential

calculated damages after deductions for fees and costs (Pl.'s Mem. at 22), the Court finds that the

total award appears to be reasonable, particularly given the risk of establishing liability.

Similarly, the amounts to be awarded to the Class representative, Fernandez, and to Class

Counsel for their fees, appear to be reasonable.[8]

On the basis of the foregoing discussion of the Grinnell factors, the Court finds the terms

of the proposed settlement to be fair and reasonable under the circumstances present in this case.

IV .   Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of

giving notice to class members.'" In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345

(quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a Rule 23(b)(3)

class action such as this, "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort" must be

provided to the class. Fed. R. Civ. P. 23(c)(2)(B).[9]  In Eisen v. Carlisle & Jacquelin, the Supreme

---

[8] Although the Court need not consider this factor at this time, counsel is requesting fees
in the amount of 33% of the Settlement Fund. (Pl's Mem. at 24).  This percentage has been
approved in prior cases. See, e.g., Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F.
Supp. 2d 254, 262 (S.D.N.Y. 2008); In re Blech Secs. Litig., No. 94 CV 7696, 2002 WL
31720381, at *1 (S.D.N.Y. Dec. 4, 2002); Adair v. Bristol Tech. Sys. Inc., No. 97 CV 5874, 1999
WL 1037878 (S.D.N.Y. Nov. 16, 1999).  The named plaintiff is to receive $20,000 for initiating
the action on behalf of the class. (See Pl.'s Mem. at 9-10).

[9] The Rule further provides that, for any class certified under Rule 23(b)(3), the notice
must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class

Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort. 417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177. Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

Here, the proposed Notice of Class Action Settlement provides the following information: (1) an explanation of who may recover under the settlement; (2) brief contextual background to this lawsuit; (3) a summary of legal rights and options; (4) an explanation of the purpose of the Notice; (5) an explanation of who falls into the Class; (6) identifying information for Class Counsel; (7) an explanation of the benefits and terms of the Settlement Agreement, including the allocation formula; (8) an overview of attorneys' fees, expenses, and the award that will be paid to the class representative, plaintiff Fernandez; (9) the result if the Court approves or does not approve the Settlement Agreement; (10) an explanation of the Fairness Hearing and the date, time, and place of the Hearing; (11) an overview of an individual's options regarding the Settlement Agreement; and (12) additional contact information should a recipient of the notice have any questions. (See Pl.'s Mem., Ex. 2).

-------------------------------------------------

certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

In this case, the Settlement Agreement provides that the Claims Administrator will mail

the Notice to the last known address of each Class member within sixty days of the Court's Order

granting preliminary approval. (Pl.'s Mem. at 32). The Class Administrator will take reasonable

steps to obtain the correct address of any Class members for whom notices are returned as

undeliverable. (Id.) Class members have sixty days prior to the Fairness Hearing to opt out of or

exclude themselves from the settlement or to file a written objection with the Court. (Id.) Once

the settlement becomes effective, defendants will send the settlement checks to Class members

within 60 days. (Settlement ¶ J).

The Court finds the proposed Notice and this means of notification to be sufficient. The

proposed Notice itself is sufficiently detailed so as to inform the Class members of their rights

and obligations, and the method of notice is practical and likely effective in reaching the affected

individuals. See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual notices

to class members at their last known addresses was a sufficient means of notification under the

circumstances). As such, the Court also approves the Consent to Become a Party Plaintiff Form.

(See Pl.'s Mem. Ex. 2). Given the detailed nature of the Notice and Consent Form, along with

the fact that defendants have not mounted an opposition to them, the Court approves of the forms

submitted by plaintiff.


CONCLUSION

Accordingly, for the reasons stated above, the Court hereby: (1) provisionally certifies

the Class for purposes of settlement; (2) grants preliminary approval of the proposed settlement,

as articulated in the Settlement Agreement; (3) appoints plaintiff Fernandez as the Class

22

representative; (4) appoints Brandon Sherr and Justin Zeller as Class Counsel; and (5) approves the proposed Notice of Class Action Settlement, the Consent to Become a Party Plaintiff Form, and the proposed method of distribution.  A Fairness Hearing is scheduled before this Court for March 4, 2014 at 10:00 a.m.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
       January 2, 2014

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York