UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
REYES FERNANDEZ, an individual, on
behalf of himself and all others similarly
situated,

                  Plaintiff,

    -against-

PRIMEFLIGHT AVIATION SERVICES,
INC., and MIKE WEIN, jointly and
severally,

                Defendants.

-----------------------------------------------------x

**MEMORANDUM
AND   ORDER**

11 CV 4862 (KAM) (CLP)

On July 21, 2014, this Court held a fairness hearing in the above captioned case to

determine whether to recommend approval of the proposed settlement of the claims asserted in

the litigation, the terms of which are set forth in a Joint Settlement and Release Agreement (the

"Settlement" or "Agreement"),[1] filed June 20, 2013.  For the reasons set forth below, the Court

approves the proposed Settlement.

## FACTUAL BACKGROUND

On October 3, 2011, plaintiff Reyes Fernandez ("plaintiff" or "Fernandez") commenced

this class action and collective action on behalf of himself and others similarly situated, against

defendants Primeflight Aviation Services, Inc. ("Primeflight") and Mike Wein ("Wein")

---

[1] Apart from minor corrections made on July 5, 2013, the terms of the Settlement have not changed from the time the Settlement was first filed before this Court for preliminary approval to the time the plaintiff moved for final approval on July 7, 2014 or defendants moved for final approval on July 14, 2014.

(together, "defendants"), jointly and severally, alleging that defendants failed to pay their employees the required minimum and overtime wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law Article 6 § 190 et seq. and Article 19 § 650 et seq. ("NYLL").  (Compl.[2] ¶¶ 1-2).

Plaintiff brings this action on behalf of approximately 1,073 current and former tipped employees ("Class Members" or the "Class") who worked for Primeflight at any time between October 3, 2005, and December 31, 2011 (the "Class Period").  (Settlement[3] ¶ A-16; Amend. to Settlement[4] at 2).  Plaintiff states that Primeflight, which operated out of the various airports throughout New York during the Class Period, hired plaintiff and others to provide airline passengers with assistance with their luggage, curb side assistance, and assistance with wheelchairs and other related passenger equipment.  (Pl.'s Mem. 6/20/13[5] at 8).  Plaintiff alleges that defendants failed to pay non-exempt employees overtime compensation for hours worked in excess of 40 hours per week, failed to pay employees the correct minimum wage rate, and failed to pay the required uniform maintenance allowance in violation of the FLSA and NYLL.

---

[2]Citations to "Compl." refer to the First Amended Complaint and Jury Demand, filed January 19, 2012.

[3]Citations to "Settlement" refer to the Joint Settlement and Release Agreement, filed June 20, 2013.

[4]Citations to "Amend. to Settlement" refer to the Joint Motion to Amend, Correct, or Supplement the Preliminary Settlement Agreement, filed July 5, 2013.

[5]Citations to "Pl.'s Mem. 6/20/13" refer to plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

(Compl. ¶ 1-2; Sherr Aff.[6] ¶¶ 8-9).

The parties have engaged in extensive discovery, including the exchange of hundreds of documents and computer spreadsheets.  (Sherr Aff. ¶ 11; see also Pl.'s Mem. 6/20/13 at 19-20). Despite some difficulty in negotiations, by June 27, 2012, the parties reached a settlement before the Court, and on June 20, 2013, the parties filed a joint motion requesting:  (1) an Order for preliminary approval of the Settlement Agreement; (2) conditional certification of the Settlement Class; (3) appointment of plaintiff's counsel as class counsel; (4) approval of the Proposed Notice of Settlement ("Notice"); and (5) approval of the Class Action Settlement Procedure (Pl.'s Mot. 6/20/13[7] at 1).

On January 2, 2014, this Court issued an Order approving these preliminary requests, and subsequently, Rust Consulting, Inc. ("Rust"), the claims administrator, sent Notice of the Settlement to 1,073 Class Members.  (Order 1/02/14[8] at 22-23; Roe Decl.[9] ¶¶ 5, 10).  As per the Agreement, Rust has provided, and will continue to provide, a telephone hotline available to the Class through December 31, 2014.  (Roe Decl. ¶¶ 12-a, 12-b).  Class Members who opt in to the

---

[6]Citations to "Sherr Aff." refer to the Affirmation of Attorney Brandon D. Sherr in Support of Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

[7]Citations to "Pl.'s Mot. 6/20/13" refer to Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel As Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure, filed June 20, 2013.

[8]Citations to "Order 1/02/14" refer to this Court's Order granting preliminary approval of Settlement, filed on January 2, 2014.

[9] Citations to "Roe Decl." refer to the Declaration of Settlement Implementation and Due Diligence by Stacy Roe on behalf of Rust, filed July 14, 2014.

Settlement by returning their signed form will receive 100% of their pro rata share for participating in both the FLSA Collective Action and the Rule 23 Class Action. (Id. ¶ 8). Class Members who fail to return a signed form and thus choose not to opt into the FLSA Collective Action, and do not timely opt-out of the Rule 23 Class Action will receive 70% of their pro rata share. (Id. ¶ 9).

The Agreement includes a total proposed settlement fund of $605,503.79, of which plaintiff's counsel seeks one-fifth (20%), or $121,100.76 in attorney's fees and costs. (Settlement ¶ A-11; Defs.' Mem. 7/14/14[10] at 6). From the remaining $484,403.03, plaintiff Fernandez will receive $20,000 in a service award, with the remainder to be distributed among the Settlement Class on a pro rata basis. (Defs.' Mem. 7/14/14 at 6). As of July 7, 2014, 374 Class Members have opted in to the Settlement by submitting signed consent forms; three Class Members have affirmatively opted-out of the Settlement; 696 Class Members[11] did not opt in to the FLSA Collective Action nor have they opted out of the Rule 23 Class Action; and no Class Member has objected to the proposed Settlement. (Roe Decl. ¶¶ 12-f, 12-j, 12-l, 12-n).

On July 7, 2014, plaintiff filed a Motion to approve the Settlement and proposed

---

[10]Citations to "Defs.' Mem. 7/14/14" refer to the Memorandum of Law In Support of Defendants Primeflight's and Mike Wein's Motion for Final Settlement Approval, filed July 14, 2014.

[11]Of the 1,073 notice and consent forms sent to the Class, a total of 102 forms were returned to Rust as undeliverable. (Roe Decl. ¶ 12-q). After conducting "traces" consistent with United States Postal Service standards on all 102 undeliverable forms, addresses for 27 Class Members remain unknown. (Id. ¶¶ 12-r, 12-s). These members are nevertheless entitled to a portion of the Settlement fund because they have not opted-out, and the "Unclaimed Settlement Amount" will be available for one year following the "Effective Date," 30 days after the date of this Order, for Class Members who did not timely participate. (Defs.' Mem. 7/14/14 at 7; Settlement ¶¶ 10-12).

attorney's fees and costs, and on July 14, 2014, defendants filed a Motion, in agreement with plaintiff, for final approval of the Settlement.  Additionally, the parties submitted separate memoranda in support of these motions:  plaintiff focuses on the propriety of the service awards, attorney's fees, and costs, while defendants focus on the distribution of notice and receiving exclusions, objections, and consents to become a party plaintiff.  (See Pl.'s Mem. 7/07/14[12] at 7, 17-28; Defs.' Mem. 7/14/14 at 6-9).[13]  On July 21, 2014, the Court held a Fairness Hearing attended by representatives from both parties.

For the reasons set forth below, the Court approves the Settlement Agreement.

DISCUSSION

A.  Adequacy of Notice

1.  Legal Standard

The standard for whether notice in a class action is adequate, under Federal Rule of Civil Procedure 23(e), is reasonableness.  United States v. New York, Nos. 13 CV 4165, 13 CV 4166, 2014 WL 1028982, at *4 (E.D.N.Y. Mar. 17, 2014); see Fed. R. Civ. P. 23(e).  Under Rule 23(c)(2)(B), notice must clearly and concisely state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests

---

[12]Citations to "Pl.'s Mem. 7/07/14" refer to Plaintiff's Memorandum of Law In Support of Motion to Approve Class Action Settlement and Attorney's Fees and Costs, filed July 7, 2014.

[13]Both parties also provided substantial support regarding the fairness, in both procedure and substance, of the Settlement in their respective memoranda.

> exclusion; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of a class judgment
> on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Courts require that the notice fairly alerts prospective members of

the Class of the terms of the proposed settlement and the options that are available to them.

United States v. New York, 2014 WL 1028982, at *4  (citing Weinberger v. Kendrick, 698 F.2d

61, 70 (2d Cir. 1982)).  Generally, notice is "deemed reasonable if the average person

understands the terms of the proposed settlement and the options provided to class members

thereunder."  In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.

2008) (citing Wal-Mart Stores v. Visa U.S.A., 396 F.3d 96, 114 (2d Cir. 2005)).

Finally, the court must "direct to class members the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Supreme Court has held Rule 23(c)(2)

requires individual notice, as opposed to general published notice, for "those class members who

are identifiable through reasonable effort."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175

(1974).  Still, "each and every class member need not receive actual notice, so long as class

counsel acted reasonably in choosing the means likely to inform potential class members."  In re

Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. at 133 (citing Weigner v. City of New

York, 852 F.2d 646, 649 (2d Cir. 1988)).


2.  Application

On January 2, 2014, this Court examined both the proposed procedure and substance of

the Notice, approving the proposed Notice and Consent Form as well as the proposed plan for

6

administering notice by the claims administrator.  (Order 1/02/14 at 20-22).  According to the

declaration submitted on behalf of the claims administrator, Rust took the following steps to

ensure proper notice:  on March 2, 2014, Rust mailed the approved, individualized Notice and

Consent Forms to each of the 1,073 Class Members by First Class mail.  Rust provided, and will

continue to provide, the opportunity for Class Members to communicate concerns through phone,

email, or fax until at least December 31, 2014; and Rust will continue to receive and accept late-

filed Consent Forms.  Rust conducted address traces for addresses of all 102 forms that were

returned as undeliverable.  Rust also drafted a "Cure Letter," explaining that it is necessary that

Class Members sign the Consent Form, and then mailed the Cure Letter to two Class Members

who had returned the Consent Form unsigned.  Finally, Rust has provided the parties with

weekly status reports, summarizing information and statistics regarding the notice process.  (Roe

Decl. ¶¶ 12, 13).  Based on these steps taken by Rust, in addition to the Court's prior approval of

the Notice and Consent Form, the Court is satisfied that the Class was afforded adequate notice

of the Settlement.


B.  Approval of the Class Settlement Fund

    1. Legal Standards

       Rule 23(e) of the Federal Rules of Civil Procedure states, in relevant part, that "the claims

[or] issues . . . of a certified class may be settled . . . only with the court's approval.  Fed. R. Civ.

P. 23(e).  To grant such approval under Rule 23(e), the Court must determine that the proposed

settlement is "fair, adequate, and reasonable, and not the product of collusion."  Joel A. v.

Giuliani, 218 F.3d 132, 138 (2d Cir. 2000); see Fed. R. Civ. P. 23(e).  Judicial policy favors the

settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d

96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d

Cir. 2004).  Whether a settlement is fair is a determination that falls within the sound discretion

of the court.  In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991); Newman v.

Stein, 464 F.2d 689, 692 (2d Cir. 1972).

       Generally, approval of a class action settlement involves a two-step process:  first, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement,

Wal-Mart Stores. Inc. v. Visa U.S.A. Inc., 396 F.3d at 116; and, second, the court holds a

fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable."

Capsolas v. Pasta Res. Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

       The Second Circuit has enumerated nine factors to guide courts in evaluating the

substantive fairness of a proposed settlement:

> (1) [T]he complexity, expense[,] and likely duration of the
> litigation; (2) the reaction of the class to the settlement; (3) the
> stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability; (5) the risks of establishing
> damages; (6) the risks of maintaining the class action through the
> trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund
> in light of the best possible recovery; and (9) the range of
> reasonableness of the settlement fund to a possible recovery in
> light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted),

abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000);

see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Becher v. Long Island

Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999).

The court must also determine if the settlement was "achieved through arm['] s-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178 (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

2. Analysis of Procedural Fairness

The Settlement is intended to encompass the claims of both the Rule 23 Class members and the opt in FLSA Class members. (See Pl.'s Mem. 6/20/13 at 9-10; see also Settlement at 1-3). Procedurally, a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d at 116 (quoting Manual for Complex Litig., Third, § 30.42 (1995)). Courts must "pay close attention to the negotiating process to ensure that the settlement resulted from arm's-length negotiations and that plaintiff['s] counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." In re Nissan Radiator/Transmission

9

Cooler Litig., 2013 WL 4080946, at *4 (quoting McReynolds v. Richards-Cantave, 588 F.3d 790, 804 (2d Cir. 2009) (internal quotations marks omitted).

Here, the parties represent that the Settlement was entered into after extensive arm's-length negotiations and "only after exchanging essential class-wide information, which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including mediation." (Pl.'s Mem. 7/07/14 at 11). Additionally, the parties represent, and this Court has previously found, that Counsel is qualified to represent the Class pursuant to the requirements of Rule 23(g). (See Order 1/02/14 at 12; Pl.'s Mem. 7/07/14 at 11; Defs.' Mem. 7/14/14 at 12).

In its January 2, 2014 Order, this Court noted that the parties engaged in settlement negotiations from November 2011 until June 2012, continued extensive negotiations regarding the Settlement's terms, and found that there was procedural fairness in reaching the proposed Settlement. (Order 1/02/14 at 15). Plaintiff and defendants both represent in their most recent memoranda to the Court that counsel expended vigorous efforts in order to reach an agreement. (See Pl.'s Mem. 7/07/14 at 10-11; Defs.' Mem. 7/14/14 at 14).

This Court is satisfied with the fairness in procedure, finding that the Settlement is the product of good faith negotiations between experienced counsel on behalf of the parties.

### 3. Analysis of Substantive Fairness

Substantively, courts in this Circuit determine fairness of a settlement through analysis of the Grinell factors discussed above. City of Detroit v. Grinnell Corp., 495 F.2d at 463. Courts are not required to find that every Grinnell factor "militates in favor of a finding of fairness," but

rather, courts must consider "the totality of these factors in light of the particular circumstances." United States v. New York, Nos. 13 CV 4165, 13 CV 4166, 2014 WL 1028982, at *6 (E.D.N.Y. Mar. 17, 2014) (internal citations omitted). In its January 2, 2014 Order, this Court analyzed the substantive fairness of the negotiations in order to approve the preliminary Settlement. (See Order 1/02/14 at 15-20). The Court now reviews these factors since Class Members have received notice of the Settlement, to determine if the substantive terms of the Agreement are fair and reasonable, warranting final approval.

  a. <u>Complexity, Expense, and Likely Duration of the Litigation</u>

For the first <u>Grinnell</u> factor, the Court noted that the "expense and likely duration of this litigation is difficult to assess," and that defendants deny liability. (<u>Id.</u> at 15-16; <u>see</u> Defs.' Ans.[14] ¶¶ 1-52). Based on this denial, defendants' additional denial that this case was even appropriate for class certification, and the inherently-complex nature of FLSA class claims, this Court found that the trial would likely be contested, long, costly, and complicated if the matter was not settled. (Order 1/02/14 at 16 (citing <u>Tiro v. Public House Invs.</u>, Nos. 11 CV 7679, 11 CV 8249, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (detailing the complexity and expenses involved in fully litigating FLSA class claims, and noting that the complexity is a factor in favor of settlement)). Based on the rewards available to Class Members provided by the Settlement fund and the projected expense and delay of litigation, this factor weighs in favor of approval. <u>See In re Nissan Radiator/Transmission Cooler Litig.</u>, 2013 WL 4080945, at *6.

---

[14]Citations to "Defs.' Ans." refer to defendants' Answer to plaintiff's Amended Complaint, filed on February 2, 2012.

b.  Reaction of Class to Settlement

Courts may find that a "small number of objections" to a settlement agreement may be viewed as "indicative of the adequacy of the settlement." Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d at 118 (citations omitted).  Here, the reaction of the class to the proposed Settlement has been overwhelmingly positive, as no Class Members have objected and only three of the 1,073 Members have opted-out.  (Roe Decl. ¶¶ 12-f, 12-n).  Deducting the three Members who have opted-out and the 27 Members whose addresses cannot be determined, a total of 1,043 Members, or 97% of the Class, will receive compensation from the Settlement.  (Id. ¶ 15; Defs.' Mem. 7/14/14 at 17).  "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).  Therefore, this factor also weighs in favor of approval.

c.  Stage of Proceedings and Amount of Discovery Completed

This factor requires determination of whether there is "some evidentiary foundation in support of the proposed settlement." United States v. New York, 2014 WL 1028982, at *7 (citing Plummer v. Chem. Bank, 668 F.2d 654, 659 (2d Cir. 1982)).  Courts find that this factor weighs in favor of final approval when "counsel ha[s] sufficient information to act intelligently on behalf of the class." Id. (citing Chatelain v. Prudential-Bache Sec., Inc., 805 F. Supp. 209, 213 (S.D.N.Y. 1992)).  Here, the parties conducted discovery over nearly two years and exchanged financial information and data to enable them to evaluate the strengths and weaknesses of the Class Members' claims.  (See Order 1/02/14 at 17).  Both parties assert that discovery was extensive and thorough.  (See Pl.'s Mem. 7/07/14 at 13-15; Defs.' Mem. 7/14/14

12

at 18-19).  Thus, this factor also favors approval.

            d.  <u>Risks of Establishing Liability, Damages, and of Maintaining the Action</u>

       The risks of establishing liability and damages additionally weighs in favor of final

approval because "[l]itigation inherently involves risks." <u>Banyai v. Mazur</u>, No. 00 CV 9806,

2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007).  Especially where, as here, FLSA class claims

are particularly fact-intensive and defendants have several available defenses, plaintiff's

likelihood of success on the merits and the size of any damage awards at trial are uncertain.

Settlement, on the other hand, eliminates the uncertainty and creates a determined outcome for

participating Class Members.  <u>See</u> <u>Velez v. Majik Cleaning Serv., Inc.</u>, No. 03 CV 8698, 2007

WL 7232783, at *7 (S.D.N.Y. June 25, 2007).  Further, despite the fact that this Court granted

plaintiff's Rule 23 class certification, plaintiff faces a risk in maintaining the class through trial

because defendants could seek to decertify the class, requiring additional discovery and briefing.

<u>See</u> <u>Capsolas v. Pasta Res. Inc.</u>, 2012 WL 4760910, at *6.  Settlement eliminates this potential

risk.  Therefore, this factor also weighs in favor of final approval.

            e.  <u>Ability of Defendants to Withstand Greater Judgment</u>

       Courts typically assign relatively lower value to this factor than the others, often noting

that the inability of the defendant to withstand greater judgment does not necessarily support the

conclusion that the settlement is fair.  <u>See, e.g.</u>, <u>In re Nissan Radiator/Transmission Cooler Litig.</u>,

2013 WL 4080946, at *9 (finding that the fact that defendant may be able to withstand a greater

judgment "neither suggests the Class Members are entitled to anything more nor indicates that

the settlement is unfair"); <u>Morris v. Affinity Health Plan, Inc.</u>, 859 F. Supp. 2d 611, 620-21

(S.D.N.Y. 2012) (finding that the factor is "neutral and does not preclude final approval");

13

Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *6 (finding that, even if defendants could have

withstood a greater judgment, the factor is "neutral"); Wright v. Stern, 553 F. Supp. 2d at 347

(holding that a settlement was "fair, reasonable, and adequate" despite finding that the defendant

had the ability to withstand a greater judgment).

Based on the other Grinnell factors, the Court finds that this factor is not significant to

determining the fairness of the Settlement.

    f. Range of Reasonableness of Settlement Fund

The eighth and ninth Grinnell factors require considering the reasonableness of the

settlement fund in both the framework of the possible recovery and the attendant risks of

litigation.  Courts make determinations of a settlement's fairness by "compar[ing] the terms of

the compromise with the likely rewards of litigation."  Velez v. Majik Cleaning Serv., Inc., 2007

WL 7232783, at *6 (citing Banyai v. Mazur, 2007 WL 927583, at *11).  Typically evaluated

together, these factors require courts to judge the fairness of a settlement not "in comparison with

the possible recovery in the best of all possible worlds, but rather, in light of the strengths and

weaknesses of plaintiffs' case."  In re Nissan Radiator/Transmission Cooler Litig., 2013 WL

4080946, at *9 (quoting In re Agent Orange Prod. Liab. Litig., 597 F. Supp. at 762).  Courts

weigh the value of a settlement agreement against the particular risks of litigation and determine

if the proposed settlement offers "a meaningful benefit" to the class.  In re MetLife

Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010); see also In re Nissan

Radiator/Transmission Cooler Litig., 2013 WL 4080945, at *9.  Thus, there is no "mathematical

equation yielding a particularized sum" to determine whether a settlement amount is reasonable.

Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *6 (quoting Frank v. Eastman Kodak Co., 228

F.R.D. 174, 186 (W.D.N.Y. 2005)).  Rather, there is a "range of reasonableness . . . which

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion." Capsolas v. Pasta Res. Inc.,

2012 WL 4760910, at *6 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

     Plaintiff asserts that the Settlement in this case "represents a good value given the risks of

litigation and comprises a substantial percentage of what the class members could expect to

obtain under a best case scenario at trial."  (Pl.'s Mem. 7/07/14 at 15-16).  Defendants also argue

that the Settlement here is reasonable in light of the "inherent risks associated with litigating the

case" and the "uncertainties of law."  (Defs.' Mem. 7/14/14 at 24).  Under the proposed

Settlement Agreement, the Class Members are entitled to recover their pro rata share of the

Settlement proceeds of $464,403.03.  (Settlement ¶ A-13; Roe Decl. ¶ 7).  Class Members who

did not opt-out of the Rule 23 class action will recover at least 70% of their  potential calculated

damages, based on the Member's percentage share of the Settlement fund.  (Settlement ¶ E).

Given the risks of litigation in this case, particularly, the risk of establishing liability, the Court

finds the total award for Class Members is reasonable.

     In summary, on the basis of the foregoing discussion of the Grinnell factors, the Court

finds that the terms of the proposed Settlement are fair and reasonable.


C.  Approval of Award for Plaintiff

     An "incentive" or "service" award is common in class actions and serves to compensate

plaintiffs for their time and effort in the pursuit of litigating the claim.  See In re Nissan

Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc.,

2012 WL 4760910, at \*9.  The general "guiding standard" is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery."  <u>Gay v. Tri-Wire Eng'g Solutions, Inc.</u>, No. 12 CV 2231, 2014 WL 28640, at \*13 (E.D.N.Y. Jan. 2, 2014) (quoting <u>Roberts v. Texaco, Inc.</u>, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Courts often grant named plaintiffs in class action cases an enhanced award, either in the form of a flat fee or a multiplied amount of their share of the settlement fund.  <u>Compare</u> <u>Capsolas v. Pasta Res. Inc.</u>, 2012 WL 4760910, at \*10 (awarding a service award of $20,000 to one named plaintiff and $10,000 for the remaining named plaintiffs), <u>with</u> <u>Velez v. Majik Cleaning Serv., Inc.</u>, 2007 WL 7232783, at \*7 (awarding named plaintiffs "twice the amount of the award that other class members will receive").

Here, plaintiff seeks a $20,000 service award for "his willingness to serve the class, the service he rendered, risks he bore, and opportunities sacrificed" by pursuing this litigation.  (Pl.'s Mem. 7/07/14 at 17).  This service award constitutes approximately 3.3% of the total settlement and defendants do not object to this award.  (Settlement ¶ I).  Neither has there been any objections filed by another Class Member.  The amount itself, as well as its percentage of the total settlement, is consistent with other service awards that have been approved in this Circuit.  <u>See</u> <u>Gay v. Tri-Wire Eng'g Solutions, Inc.</u>, 2014 WL 28640, at \*13 (approving service award constituting 4% of the total settlement, collecting cases showing the approval of service awards which represented 3.7% to 5% of the total recovery, and noting that no Class Member filed any objections).  Therefore, the Court approves plaintiff's requested $20,000 service award.

16

D.  Plan of Allocation

Generally, "'the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." Precision Assocs., Inc. v. Panalpina World Trans. (Holding) Ltd., No. 08 CV 42, 2013 WL 4525323, at *12 (E.D.N.Y. Aug. 27, 2013) (quoting In re Painwebber Ltd. P'ships Litig., 171 F.R.D. 104, 133 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997)).  Additionally, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  Id. (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)) (internal quotation marks omitted).

As discussed above, the plan of allocation works as follows:  of the total settlement amount of $605,503.79, plaintiff's counsel will receive one-fifth, or $121,100.76 to compensate counsel for costs and services rendered.  Of the remaining $484,403.03, plaintiff Fernandez will receive a service award of $20,000 as class representative, and the remaining $464,403.03 ("Aggregate Settlement Proceeds") will be distributed amongst the Class on a pro rata basis. (See Settlement ¶¶ A-11, A-13; Defs.' Mem. 7/14/14 at 6).  The Aggregate Settlement Proceeds amount is further divided into three different categories of payments for compensatory or liquidated damages: "(1) $226,792.32 for settlement of minimum wage and other claims related to tip credits; (2) $193,574.07 for settlement of minimum wage and other claims related to uniform maintenance allowance; and (3) $44,036.64 related to remaining allegations of various state and federal wage and hour claims asserted in the Complaint." (Settlement ¶ A-13).  The Agreement also specifies that Members who opt in to the FLSA collective action will receive 100% of their pro rata share of the Settlement, while those who do not opt in to the FLSA

17

collective action but do not opt out of the Rule 23 class action claim, will receive 70% of their pro rata share. (Id. ¶ F). Finally, the Agreement designates that one year following the Effective Date, which is 30 days after the date of this Order, any remaining unclaimed funds will be divided equally and contributed to a charity selected by plaintiff and a charity selected by defendants. (Id. ¶ G).

The Court concludes that this plan of allocation, recommended by experienced and competent counsel, is fair, reasonable, and adequate, and is supported by the very small number of out-outs, the absence of objections from Class Members, and the additional materials the parties have submitted in support of the Settlement's final approval. See Precision Assocs., Inc. v. Panalpina World Trans. (Holding) Ltd., 2013 WL 4525323, at *13 (approving an allocation plan based on competency of counsel, relatively small number of opt-outs, and absence of objections from the class).

E. Approval of the Requested Attorneys' Fees and Costs

Plaintiffs' counsel seeks $121,100.76 in fees and costs accrued during this litigation, which equals one-fifth of the total settlement amount. (Pl.'s Mem. 7/07/14 at 19). The settlement is "not conditioned on the award of attorneys' fees and costs as approval of class settlement will be considered separately from approval of fees and costs." (Settlement ¶ H). The Court must determine if this proposed amount of attorney's fees and costs is fair and reasonable.

1. Legal Standard

The FLSA provides for "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In this Circuit, courts may assess the fairness of an award for

18

attorney's fees using either the percentage-of-the-fund or the lodestar method. <u>McDaniel v. County of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010) (citing <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d at 121). An award based on a percentage of the common fund method recognizes that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." <u>In re Lloyd's Am. Trust Fund Litig.</u>, No. 96 CV 1262, 2002 WL 31663577, at *24 (S.D.N.Y. Nov. 26, 2002). Alternatively, the lodestar method involves the multiplication of the number of hours reasonably billed to the class by an appropriate hourly rate, and once that computation has been made, the court may increase the lodestar by adding a multiplier of that number "based on other less objective factors," including the risk of litigation or the attorneys' performance, for example. <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d at 47 (citations omitted) (internal quotation marks omitted). This method has been viewed as a more objective or mathematical approach to compensation, as it considers an award in terms of quantifiable, numerical values. <u>See id.</u> at 47-50. Under either method, the fees awarded in common fund cases "may not exceed what is reasonable under the circumstances." <u>Id.</u> at 47 (internal quotation marks omitted). To determine the "reasonableness" of a common fund attorney's fee, courts use the following <u>Goldberger</u> factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

<u>Id.</u> at 50 (citing <u>In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.</u>, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

The trend in this Circuit is toward the percentage method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d at 121 (quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25).  It also eliminates potential incentives of the lodestar approach to increase the number of billable hours and prolong litigation.  (Id.)  Still, the Second Circuit acknowledged in Goldberger v. Integrated Res., Inc. that the "lodestar [method] remains useful as a baseline even if the percentage method is eventually chosen," and encouraged "the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  209 F.3d at 50; see also Gay v. Tri-Wire Eng'g Solutions, Inc., 2014 WL 28640, at *11 (collecting cases in which the court cross-checked the reasonableness of a percentage fee by performing a lodestar-multiplier analysis).  Based on awards in similar cases and the application of the Goldberger factors, with a cross-check using the lodestar method, the Court concludes that the requested fees and costs are reasonable.

2.   Analysis of Fairness of Requested Percentage-of-the-Fund Award

a.   Goldberger Factor Analysis

The first Goldberger factor considers the time and labor expended by counsel.  Here, Class Counsel represents that they have "expended substantial time and labor on this case over the past three years," including investigation into potential claims and defenses, discovery and review of pay records, time records, and other related documents, and negotiation and mediation efforts to resolve the matter.  (Pl.'s Mem. 7/07/14 at 22-23).  The action required considerable

time and labor on the part of Class Counsel; therefore, this factor weighs in favor of approving the fee. See Velez v. Majik Cleaning Serv., Inc., 2007 WL 7232783, at *8 (approving an attorney's fee award of 31% of the total settlement fund based on determination that the legal work included "reviewing many documents, researching legal issues and factual matters, conducting investigations, attending depositions, making multiple court appearances, negotiation settlement terms and conditions with opposing counsel, and engaging in motion practice").

Second, the Court considers the magnitude and complexities of the litigation.  Courts recognize that many labor cases involve complex legal issues.  However, "[a]mong FLSA cases, the most complex type is the 'hybrid' action . . . where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011).  Thus, given that the present case is such a hybrid action, this factor supports counsel's requested award.

The third Goldberger factor considers counsel's risk in undertaking the litigation.  Here, counsel assumed the sizeable risk that they would not recover anything, since their fee entitlement depended on obtaining a favorable outcome for the Class.  (See Pl.'s Mem. 7/07/14 at 23-24).  "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award;" therefore, the fact that counsel's compensation was entirely dependent upon securing success weighs in favor of approving the fee. Johnson v. Brennan, WL 4357376, at *17 (citing City of Detroit v. Grinnell Corp., 495 F.2d at 470).

Fourth, to determine the quality of the Class representation, "courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."

Johnson v. Brennan, 2011 WL 4357376, at *18 (quoting Taft v. iAckermans, No. 02 CV 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citations omitted)).  The Court has determined, supra, that the recovery obtained provides sufficient benefit for the Class Members. Additionally, this Court acknowledged in its January 2, 2014 Order that Class Counsel has "extensive experience litigating and settling wage and hour cases and other employment cases, and thus they are well-versed in the applicable law." (Order 1/02/14 at 12 (citing Pl.'s Mem. 6/20/13 at 30-31)).  Thus, this factor also weighs in favor of approving the award.

The fifth factor requires a comparison of the requested fee in relation to the Settlement. Regardless of the method used to calculate attorney's fees, "courts in this Circuit have routinely upheld attorney's fees awards of 30%-33.3% in class action cases where a counsel's fee award was entirely contingent on success."  Gay v. Tri-Wire Eng'g Solutions, Inc., 2014 WL 28640, at *11. (See Pl.'s Mem. 7/07/14 at 19-20).  The appropriate percentage, however, is often directly influenced by the size of the class's settlement fund:  to avoid windfalls for counsel in cases in which the fund runs into the multi-millions, "courts typically decrease the percentage of the fee as the size of the fund increases."  Precision Assocs., Inc. v. Panalpina World Trans. (Holding) Ltd., 2013 WL 4525323, at *16 (quoting In re Interpublic Sec. Litig., No 02 CV 6527, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004)).

Here, because the total settlement amount totals less than one million dollars, a "megafund reduction" is not required to avoid this issue.  Id.  Further, the percentage of the fund sought by counsel here is 20%, which falls on the lower end of the appropriate range, based on the relative size of the total settlement awarded in this Circuit.  See, e.g., Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 339-340 (S.D.N.Y. June 22, 2012) (awarding a 33%

22

fee of a $850,000 settlement, noting that a fee of one-third of the fund is typical, and that courts have awarded 33% of "substantially larger settlement funds in similar combined FLSA-NYLL wage and tip actions); Johnson v. Brennan, 2011 WL 4357376, at *18-19 (finding that the "modest" size of a $440,000 settlement weighed in favor of granting the requested fee award of 33% of the common fund); Prasker v. Asia Five Eight LLC, No. 08 CV 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (awarding a fee award of $346,500, or 33%, of the common fund in an FLSA and NYLL settlement).

The sixth and final Goldberger factor involves an inquiry into the public policy considerations. As discussed above, the structure of a percentage-of-the-fund award provides a strong incentive for early resolution of litigation and efficient handling of cases. See Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F. 3d at 122. The percentage approach is an "efficient means of rewarding the work of class action attorneys, and avoids the wasteful and burdensome process – to both counsel and the courts – of preparing and evaluating fee petitions." In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25. Thus, this factor, along with the analysis of the other Goldberger factors, supports the approval of the requested attorney's fees and costs.

    b. Lodestar Method Analysis

Class Counsel is requesting an award of 20% of the total amount of the Settlement Fund for attorney's fees and costs. (Pl.'s Mem. 7/07/14 at 19; Settlement ¶ A-11). This amounts to $121,100.76 of the $605,503.79 that comprises the gross Settlement amount. (Settlement ¶ A-11). Defendant did not object to Class Counsel's application for attorney's fees and costs. (Id. at H). Nor have any Class Members lodged an objection to the fees requested by Class Counsel.

Courts in this Circuit have often approved requests for attorneys' fees amounting up to 33.3% of a settlement fund. See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp.

2d 254, 262 (S.D.N.Y. 2008) (approving attorneys' fees of 33.3% of a $1.5 million settlement

fund); In re Blech Secs. Litig., No. 94 CV 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002)

(awarding attorneys' fees of 33.3% of settlement fund); see also Adair v. Bristol Tech. Sys., Inc.,

No. 97 CV 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999); Klein v. PDG Remediation,

Inc., No. 95 CV 4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999).  In this case, Class Counsel

seeks 20% of the settlement fund representing a lodestar multiplier of approximately 2.7.  (Pl.'s

Mem. 7/07/14 at 27).  "Courts regularly award multipliers from two to six times the lodestar."

Monserrate v. Tequipment, Inc., No. 11 CV 6090, 2012 WL 5830557, at *3 (E.D.N.Y. Nov. 16,

2012); see In re Lloyd's Am. Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *27 (S.D.N.Y.

Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive

lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers

awarded by courts within the Second Circuit");  Febus v. Guardian First Funding Group, LLC, 870

F. Supp. 2d at 340 (finding that "[f]or fees of $283,333 and a lodestar of $127,000, the resulting

'lodestar multiplier' of 2.2 is well within the range of acceptable"); Maley v. Del Global Tech.

Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is

"well within the range awarded by courts in this Circuit and courts throughout the country").  Thus,

the Court finds the attorney's fees requested by Class Counsel to be reasonable.

Finally, "[i]t is well established that counsel who create a common fund like this one are

entitled to the reimbursement of litigation costs and expenses."  In re Marsh ERISA Litig, 265

F.R.D. 128, 150 (S.D.N.Y. 2010) (approving costs and expenses of $1,270,915.40); see also In re

Vitamin C Antitrust Litig., 2012 WL 5289514, at *7, 9-11 (approving attorneys' expenses of $2.5

million to be paid out of a settlement fund of $9.5 million); In re Veeco Instruments, Inc., No. 05

MDL 01695, 2007 WL 4115808, at *11 (S.D.N.Y. Nov. 7, 2007) (awarding over $700,000 in costs

and expenses). The costs and expenses requested by Class Counsel represent filing fees and mailing costs amounting to $388.42. (Pl.'s Mem. 7/07/14 at 28). These costs are included in the requested $121,100.76 for attorney's fees and costs. The defendants have not objected to these costs. As such, the Court finds the requested attorney's fees and costs of $121,100.76 to be reasonable and thus approved.

## CONCLUSION

For the reasons stated above, the Court approves: (1) the proposed Settlement fund, as articulated in the Joint Settlement and Release Agreement, of $464,403.03 (2) a service award of $20,000 for plaintiff; and (3) the requested attorney's fees and costs of $121,100.76, equaling one-fifth of the total settlement.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
      October 9, 2014

 

/S/ CHERYL POLLAK
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York